USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/9/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JERRY RAMRATTAN,

            Plaintiff,

            -v-

STEVIE BROWN and BERNARD PORTER,

            Defendants.

------------------------------------------------------------X

No. 12 Civ. 7818 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against Detective Investigators Steven Brown[1] and Bernard Porter of the Queens County District Attorney's Office ("Defendants"). Plaintiff alleges that Defendants violated his constitutional rights by arranging for him to be filmed by the news media at Queens County Supreme Court. Defendants move to dismiss the action for failure to state a claim. For the following reasons, the motion is granted.

## BACKGROUND

On November 23, 2011, Plaintiff was convicted of rape, unlawful imprisonment, perjury, and other crimes following a jury trial in Queens County Supreme Court. (Bassett Decl. Ex. A.) Plaintiff's case received extensive media coverage from its inception, due to the sensational nature of the accusations against him: he was accused and ultimately convicted of raping his ex-girlfriend and carrying out a plan to frame her for a series of staged robberies.[2] On October 18, 2012, Plaintiff initiated this action, on behalf of himself and members of his family, against Queens District

---

[1] Defendants refer to the individual named "Stevie Brown" in the caption as "Steven Brown." (Defs.' Mem. of Law 1.)

[2] See Condit v. Dunne, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004) (taking judicial notice of "the media frenzy" and "widespread publicity" over issues underlying slander lawsuit), and cases cited therein.

Attorney Richard Brown, Queens Assistant District Attorney Frank DeGaetano, the prosecutor who handled Plaintiff's criminal case, (collectively, the "prosecutors"), and Defendants.

The complaint asserted that the prosecutors violated Plaintiff's constitutional right to a fair trial by eliciting perjured testimony, manipulating the news media coverage in order to bias the jury, and committing various other types of "professional . . . and prosecutorial misconduct." (Dkt. 2 at ECF 4-5, 7.)[3] On December 20, 2012, the Court dismissed the claims against the prosecutors on immunity grounds, as prosecutors have absolute immunity from suit for actions taken in their capacity as advocates for the state. (Dkt. 7.) See Imbler v. Pachtman, 424 U.S. 409, 430-31 & n.33 (1976).

The Court also dismissed Plaintiff's claims made on behalf of his four family members. (Dkt. 7.) As Plaintiff has not been admitted to the practice of law, he cannot represent anyone other than himself. See Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010).

In the December 20th Order, the Court further advised Plaintiff that it would construe his request for "dismissal" of his criminal case as a request for relief pursuant to 28 U.S.C. § 2254, and that these claims would be dismissed if he did not amend his petition to allege the exhaustion of state remedies and to add the warden of the facility where he was being held as respondent. (Dkt. 7.) Plaintiff did not amend his complaint, nor did he respond to a subsequent order directing him to notify the Court whether he still intended to pursue his § 2254 claims. (Dkt. 13.) The Court, accordingly, dismissed Plaintiff's § 2254 claims on August 6, 2013. (Dkt. 16.)

The only issue remaining before the Court is Plaintiff's assertion that when he was transported to the Queens County Supreme Court for a "pretrial hearing," he was "ambush[ed] by the media" and followed and filmed "all the way to the court room [sic]." (Dkt. 2 at ECF 4.)

---

[3] For ease of reference, citations to "ECF" reflect page number designations made by the Court's Electronic Case Filing system.

Because the Court must construe a *pro se* plaintiff's pleadings liberally, see Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013), it treats Plaintiff's allegation not only as a claim that his "rights to a fair trial" were violated, (Dkt. 2 at ECF 4)—which would be appropriately raised in a habeas petition, see Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)—but also as a claim that Defendants violated his Fourth Amendment right to freedom from unreasonable seizures.[4]

Defendants filed a motion to dismiss on December 23, 2013, and the Court gave Plaintiff until January 23, 2014 to file an opposition. (Dkt. 26, 27.) The Court subsequently granted Plaintiff two additional extensions. (Dkt. 34, 40.) On April 4, 2014, it advised Plaintiff that if he did not file an opposition by May 2, 2014, it would consider the motion fully submitted and decide it without briefing from Plaintiff. (Dkt. 40.) To date, Plaintiff has not filed an opposition, and the Court deems Defendants' motion to be fully submitted.[5]

## DISCUSSION

### I.  Applicable Legal Standard

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint . . . . [and] draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citation omitted). This rule "applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006) (quoting Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002)). As noted above, a *pro se* complaint "must be construed

---

[4] Plaintiff also alleges that his property was stolen when the search warrant for his home was executed. (Dkt. at ECF 6, 12.) That allegation cannot form the basis for a § 1983 claim, however, because Plaintiff does not allege that Defendants were personally involved in executing the warrant. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994))).

[5] Plaintiff has submitted various letters to the Court during this time period, although none were relevant to the motion to dismiss or responsive to the Court's orders.

liberally with special solicitude and interpreted to raise the strongest claims that it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." Hogan, 738 F.3d at 515 (internal quotation marks and citation omitted).

## II. The Alleged "Perp Walk" Did not Violate the Fourth Amendment

In Lauro v. Charles, the Second Circuit held that a staged "perp walk" which serves no legitimate law enforcement purpose "constitute[s] an unreasonable exacerbation of the seizure that occur[s]" during an arrest. 219 F.3d 202, 213 (2d Cir. 2000). A perp walk takes place "when an accused wrongdoer is led away in handcuffs by the police to the courthouse, police station, or jail," and has been featured in the press for decades. Caldarola v. Cnty. of Westchester, 343 F.3d 570, 572 (2d Cir. 2003).

The critical inquiry under Lauro is whether Defendants had a legitimate law enforcement purpose for their actions. The police in that case, who presented the press and public with a staged perp walk—an artificial recreation of a previous event—did not. 219 F.3d at 213. In a staged walk, "the police take the suspect outside the station house, at the request of the press, for no reason other than to allow him to be photographed." Id. at 204. In finding such conduct violative of the Fourth Amendment, the Court stated that any "legitimate state interest in accurate reporting of police activity . . . is not well served by an inherently fictional dramatization of an event that transpired hours earlier." Id. at 213. The Court explicitly limited its holding, however, to cases in which there is no "legitimate law enforcement justification for transporting a suspect," and made clear that it was "not hold[ing] that all, or even most, perp walks are violations of the Fourth Amendment." Id.

When confronted two years later with unstaged perp walks involving defendants "being legitimately transported pursuant to [] lawful arrest[s]," the Second Circuit found no Fourth Amendment violation. See Caldarola, 343 F.3d at 576-77. In Caldarola, the County sought to

4

publicize the arrests of corrections officers suspected of receiving disability benefits on the basis of fraudulent job injury claims. Id. at 572. Among other publicity efforts, the County "advis[ed] the media of [plaintiffs'] impending 'perp walks' to the courthouse for arraignment," which led to the plaintiffs being filmed walking up the courthouse steps. Id. at 571-72. In affirming summary judgment for the defendants, the court explained that the County's actions served "to inform the public about its efforts to stop the abuse of disability benefits by its employees, . . . enhance[] the transparency of the criminal justice system, and . . . deter others from attempting similar crimes." Id. at 576.

Plaintiff here fails to allege that Defendants lacked a legitimate government purpose for transporting him to the courthouse. Indeed, he asserts that, on the day in question, the prosecutors directed Defendants to transport him from a facility in Nassau County, where he was being detained, to the Queens County Supreme Court for a "pretrial hearing." (Dkt. 2 at ECF 4.) According to Plaintiff, once he and Defendants arrived at the courthouse, they were "ambush[ed] by the media" and followed and filmed "all the way to the court room [sic]." (Id.) In light of Plaintiff's own allegation that he was being taken to court for a pretrial hearing, he has not plausibly alleged that there was no legitimate purpose for transporting him there. See Caldarola, 343 F.3d at 576 ("The government purposes that were rejected in Lauro are valid in this situation because . . . [the plaintiff] was being legitimately transported pursuant to a lawful arrest."); Otero v. Town of Southampton, 194 F. Supp. 2d 167, 181 (E.D.N.Y. 2002), aff'd, 59 F. App'x 409 (2d Cir. 2003) ("Transporting Plaintiff to his arraignment qualifies as a legitimate law enforcement purpose.").

Furthermore, to the extent Plaintiff is claiming that Defendants notified the media in advance that he would be appearing in court, that too does not violate the Fourth Amendment. See

Caldarola, 343 F.3d at 571-72. Plaintiff, therefore, fails to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated:   June 9, 2014
         New York, New York

Ronnie Abrams
United States District Judge